# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY OSBORN, o/b/o )
C.N.O., a minor, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-15-292-FHS-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant Mary Osborn requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her daughter C.N.O. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that C.N.O. was not disabled. For the reasons discussed below, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability for persons under the age of eighteen according to the Social Security Act is defined as a medically determinable physical or mental impairment that causes marked and severe functional limitations that can be expected to cause death or that has

lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and "the substantiality of the evidence must take into account whether the record detracts from its

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant to establish she has an impairment or combination of impairments that is severe. If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, she is considered not disabled. At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled. See 20 C.F.R. § 416.924(a)-(d)(2).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Background and Procedural History

C.N.O. was born on October 1, 2003, and was ten years old at the time of the administrative hearing (Tr. 46, 157). The claimant alleges C.N.O. was disabled as of January 1, 2008, due to a mood disorder, depression, and attention deficit hyperactivity disorder (Tr. 204). The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq.*) on March 26, 2012, which was denied. ALJ Deborah L. Rose held an administrative hearing and determined that C.N.O. was not disabled in a written opinion dated February 28, 2014 (Tr. 18-34). The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step three of the sequential evaluation. She determined that C.N.O. had the severe impairments of personality disorder, oppositional defiant disorder, attention deficit hyperactivity disorder, bipolar disorder, and language delays (Tr. 21). She then determined that the claimant's impairments did not meet or medically equal a listing, nor did they functionally equal the severity of the listings (Tr. 21). The ALJ then concluded that C.N.O. was therefore not disabled (Tr. 33).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly consider whether she met Listings 112.08 and 112.11, (ii) failing to properly evaluate her impairments at step three, and (iii) failing to properly evaluate her credibility. The Court agrees the ALJ did not perform a proper step three analysis and therefore, the case must be reversed and remanded.

In October 2008, the claimant was diagnosed with oppositional disorder of childhood or adolescence, and intermittent explosive disorder (Tr. 318). Follow-up notes repeatedly stated that the claimant continued to exhibit verbal and/or physical aggression with her siblings at home, that she required supervision and redirection for undesired behavior and further refused to follow simple directions, and that she remained self-absorbed, placing her wants and/or needs over all else (Tr. 340, 343, 350). A 2012 assessment revealed that the claimant had moderate to severe problems in the areas of feeling/mood/affect, thinking/mental process, family, interpersonal, and role performance. (Tr. 368-370).

The relevant evidence in the record reveals that the claimant repeated the first grade during the 2011-2012 school year because she was not performing at grade level the first year (Tr. 169-190). By May 2012 her reading level was 1.72 grade level, and her math level was 2.29 grade level (Tr. 209). In October 2012, the claimant's second-grade teacher noted that her behavior was better when she was medicated, and that the claimant was on a section 504 plan for all subjects (Tr. 220, 226). In February 2013, the claimant's third quarter grades for second grade indicated that she was failing social

studies and reading, and had a D+ in math, but a B in language arts and a B+ in science (Tr. 245). She was eligible for the 504 plan due to disruptive behavior disorder, and it was amended in April 2013 to account for oppositional defiance disorder and ADHD as well (Tr. 229, 279). An April 29, 2013 notation indicated that her impairments interfered with learning and concentrating, and further noted her attitude and stated that the claimant has "mood changes, inconsistency in behaviors, impulsiveness, not cooperative, lack of social skills. [T]hese vary in degrees from day to day" (Tr. 279). Her teacher stated that she noticed the claimant's behavior was worse when she stopped taking her medication (Tr. 281, 301). The fourth grade teacher, who had interacted with the claimant, also prepared a letter stating that the claimant "has always been very defiant, rude, disrespectful, and obstinate" and "always refuses to do what is asked of her, and when I try to correct her she will get hateful, rolls her eyes, does the exact opposite of what is asked of her, and back talks at every chance she can get," then concluded describing her as "by far one of the worst behaved children I have come into contact with" (Tr. 283). Between April 29, 2013, and May 10, 2013, she was disciplined three times, culminating with a three-day out-of-school suspension (Tr. 284-286).

On June 2, 2012, Beth Jeffries, Ph.D., conducted a mental status examination of the claimant, in which she assessed the claimant with oppositional defiance by history only, and depression not otherwise specified (Tr. 391). She noted that the claimant was able to concentrate well in the small exam room, and that the chaotic environment at home probably contributed to the difficulty concentrating there (Tr. 391). She believed there was some truth to the claimant's reports that she can do her work but does not want

to, and noted she had a good understanding of the ability to manipulate (with anger and violence) to get her way (Tr. 389-391). Dr. Jeffries believed depression was a better diagnosis for the claimant, and strongly recommended the continuation of therapy and medication management (Tr. 391-392).

The claimant then underwent a psychological evaluation with Larry Vaught, Ph.D., on December 10, 2012 (Tr. 413). He conducted a clinical interview and administered a number of tests, noting that her strength was in perceptual reasoning, but that verbal comprehension was a relative weakness (Tr. 414). He described her as "somewhat defiant, impulsive and restless," but basically cooperative, with a full-scale IQ score of 80 (Tr. 417). He found that she was largely on a second-grade level (Tr. 417). His recommendations stated, *inter alia*, that: (i) she should be carefully monitored for behavioral or mood issues, (ii) she needed to continue the 504 plan for individualized instruction, (iii) consider social skills group, (iv) she may require a behavioral management plan in school and at home due to maladaptive behaviors, and (v) a recommendation for an occupational therapy evaluation (Tr. 417). He diagnosed her with oppositional defiance disorder, ADHD (by history), and rule out mood disorder (Tr. 417).

On July 9, 2012, state reviewing physician Deborah Hartley, Ph.D. reviewed the claimant's record and determined that she had a marked limitation in interacting and relating with others; a less than marked limitation in acquiring and using information, attending and completing tasks, and caring for herself; and no limitation in moving about and manipulation of objects, as well as health and physical well-being (Tr. 77-78). On

reconsideration, Dr. Cynthia Kampschaefer, Psy.D., reviewed the record on March 2, 2013, agreeing with Dr. Hartley's assessment, except that Dr. Kampschaefer found the claimant's limitation in interacting and relating with others was less than marked (Tr. 92-92).

The claimant underwent further evaluation at Oklahoma Families First, where she was again diagnosed with oppositional defiant disorder, as well as bipolar I disorder, single manic episode, moderate (Tr. 421).

On September 9, 2013, Jennifer Sumner, Ph.D. conducted a psychodiagnostic intake interview, in which she noted the claimant had resumed taking medication but was still endorsing symptoms related to impulsivity, frequent interruption, poor attention span, acts as if driven by a motor, excessive swearing, temper outburst, difficulty finishing tasks, disorganized, sleep problems, not listening, no understanding/learning from consequences or experience, not responding to discipline, sad/withdrawn, and making friends easily but losing them due to fighting or cursing at them (Tr. 430). Dr. Sumner recommended, *inter alia*, strongly that the claimant have an evaluation from a speech language pathologist, and also recommended an evaluation from an occupational therapist, and encouraged the claimant's mother to obtain a pscyho-educational assessment through the schools (Tr. 431, 479). In an addendum, she noted the claimant had documented challenges to attention, behavior, and mood, and that there were additional concerns related to learning (Tr. 432).

The claimant was then referred for evaluation by an occupational therapist, a speech language pathologist, and a developmental evaluation (Tr. 462-463). These

revealed that the claimant did not need occupational therapy services but that additional behavioral assessments might be beneficial, and that she would receive speech therapy (Tr. 466).

At step three in a childhood disability case, the ALJ must determine whether the child's impairments or combination of impairments medically equal or functionally equal the listings. *See Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001). If a child's impairment does not meet or medically equal a listing, the ALJ must then determine whether the child's impairment functionally equals the listing, which means that the impairment (or combination or impairments) results in marked limitations in two domains of functioning or an extreme limitation in one domain. *See* 20 C.F.R. § 416.926a(a). These domains include: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself ("self-care"), and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(iv). When the ALJ determines there is a marked limitation in one of the six domains, he has found the limitation seriously interferes with the "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation interferes very seriously with a child's ability to do these things. *Id.* § 416.926a(e)(3)(i). Consideration of functional limitations includes information pertaining to functioning, such as reports of classroom performance, observations from others, or evidence of formal testing. *Id.* § 416.926a(e)(1)(i-ii).

In her written opinion at step three, the ALJ thoroughly summarized the hearing testimony from C.N.O. and her mother, as well as the medical evidence in the record (Tr. 22-27). Without evaluating most of the medical opinions in the record, the ALJ then assigned great weight to Dr. Kampschaefer's reviewing opinion, and proceeded to go through each of the six domains of functioning, providing lengthy boilerplate descriptions for each domain then citing exclusively to Dr. Kampschaefer's reviewing assessment (which notably predated the speech pathology and occupational therapy evaluations as well as Jennifer Sumner's evaluation and recommendation) in making her findings for *each* of the domains of functioning (Tr. 27-33). She then determined that the claimant had "no limitation" in the domains of moving about and manipulating objects and health and physical well-being, and "less than marked limitation" in the remaining four domains.

The claimant contends that the ALJ improperly evaluated the evidence related to three domains of functioning: (i) acquiring and using information, (ii) attending and completing tasks, and (iii) interacting and relating with others. The undersigned Magistrate Judge agrees that the ALJ's analysis was deficient. The ALJ's analysis regarding C.N.O.'s degree of limitation in each of the six domains of functioning consisted of an explanation of the domain itself and a brief mention of only one record (if at all), without explanation or analysis related to the ALJ's findings. But "[t]he ALJ is charged with carefully considering all the relevant evidence and *linking* his findings to specific evidence." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) [emphasis added], *citing Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, the

weighing of evidence took place inside the ALJ's head, leaving the Court unable to derive how she reached her conclusions. "In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . . and whether he applied the correct legal standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence and the ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-1010. Thus, while the ALJ's decision does include a recitation of most of the evidence in the record, she did not link the evidence to her conclusions and such conclusory findings require remand for the Commissioner to explain her decision. Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in any adjustments to the step three findings regarding the domains of functioning, the ALJ should re-determine whether C.N.O. is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**